NIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRAVIS NORDWALD, )
)
               Plaintiff, )
)
    v. )      Case No. 20-2528-JWL
)
BRIGHTLINK COMMUNICATIONS, LLC, )
)
             Defendants. )
)
_____)

## **<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on each party's motion for summary judgment on the other's affirmative claims. For the reasons set forth below, defendant's motion (Doc. # 59) is hereby **granted in part and denied in part.** The motion is granted with respect to (a) plaintiff's contract and statutory claims for unpaid severance pay and for unpaid vacation pay, (b) his claim for specific performance and (c) his negligence per se claim, and defendant is awarded judgment on those claims; the motion is otherwise denied. Also, as discussed below, plaintiff's motion (Doc. # 61) is hereby **granted,** and plaintiff is awarded judgment on defendant's counterclaims.

## I.  **Background**

Defendant Brightlink Communications, LLC ("Brightlink"), a communications platform and technology company located in Georgia, employed plaintiff Travis Nordwald as its Director of Carrier Operations.  Brightlink sent Mr. Nordwald a Revised Employment Offer letter on October 5, 2017, which contained various terms for Mr. Nordwald's compensation, and Mr. Nordwald began his employment in November 2019.  In March 2019 and March 2020, Mr. Nordwald received bonuses from Brightlink for his work in 2018 and 2019 respectively.  Brightlink terminated Mr. Nordwald's employment on July 24, 2020.

In October 2020, Mr. Nordwald initiated the present action against Brightlink.  Mr. Nordwald alleges that Brightlink failed to pay the following compensation owed to him under the terms of his employment:  (1) additional bonus payments for 2018 and 2019; (2) severance pay;  (3) payment for unused vacation time; and  (4) additional 401(k) contributions based on the claimed additional bonus payments.  Mr. Nordwald asserts claims for such payments under the Kansas Wage Payment Act ("the KWPA" or "the Act"), K.S.A. § 44-312 *et seq.*, and as damages for breach of contract.  Mr. Nordwald also asserts claims for unjust enrichment and negligence per se.  Brightlink has asserted counterclaims against Mr. Nordwald for fraud, breach of fiduciary duty, and negligence, based on its allegation that Mr. Nordwald caused it to incur damages when he wrongfully recommended that Brightlink undertake a project ("the Project") under which it would enter into certain agreements with third party vendors.  Each party now moves for summary judgment on the other party's affirmative claims.

2

## II.    **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition

transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.   Defendant's Motion for Summary Judgment on Plaintiff's Claims

### A.   *Claim for Unpaid Bonuses*

Brightlink first seeks summary judgment on Mr. Nordwald's claims for unpaid bonuses.  In asserting that claim, Mr. Nordwald relies on Brightlink's offer letter, which stated that Mr. Nordwald would receive, in addition to his fixed annual salary, short-term incentive bonuses based on "an improvement in COGS target of 4%," with the amount determined according to a schedule keyed to how much of the target percentage was achieved in the calendar year.  Brightlink calculated Mr. Nordwald's incentive bonuses for 2018 and 2019 at $37,500 and $0 respectively, in accordance with the schedule in the offer letter, based on its determinations that the company had achieved a 3.66 percent COGS reduction in 2018 and no reduction in 2019.[1]  Brightlink asserts that it made those determinations by factoring out reductions in COGS (cost of goods sold) attributable to market forces, so that it could determine the amount of any reduction due solely to Mr.

---

[1] Brightlink also paid Mr. Nordwald discretionary bonuses of $10,000 and $12,500 for those years.

4

Nordwald's efforts.  Mr. Nordwald claims that the offer letter entitled him to bonuses based purely on the amount by which Brightlink's COGS decreased, without any adjustment for market conditions or any other adjustment.

The Court first addresses Brightlink's argument that no contract of employment existed between the parties.  Brightlink notes that Mr. Nordwald did not sign any written employment agreement and that he was an employee at will.  Even if the parties did not agree that Mr. Nordwald would be employed by Brightlink for a particular duration (making Mr. Nordwald an at-will employee), however, there is still ample evidence (viewed in Mr. Nordwald's favor according to the applicable summary judgment standard) that the parties formed an agreement under which Mr. Nordwald agreed to perform work for Brightlink and Brightlink agreed to compensate Mr. Nordwald for that work.  For instance, there is evidence that Brightlink made an offer of employment; that Mr. Nordwald accepted that offer and began to work for Brightlink; and that Brightlink paid Mr. Nordwald for his work according to the compensation terms in the offer letter.  Brightlink also concedes that a contract may be formed between an employer and employee despite the absence of a written employment agreement.  The issue, then, is not whether there was an agreement between the parties; rather, this claim turns on determining the parties' intent with respect to the term of that agreement regarding the payment of incentive bonuses to Mr. Nordwald.

As noted, both parties rely on the offer letter for their positions concerning the calculation of Mr. Nordwald's bonuses.  In discussing Mr. Nordwald's compensation, the offer letter provided for a bonus based on "an improvement in COGS target of 4%" in

accordance the schedule in the letter.  As Mr. Nordwald notes, that provision did not include any reference to a market adjustment.  Brightlink relies on an attachment to the offer letter that set forth various "accountabilities" and "objectives" for Mr. Nordwald, including as one objective "2-4% COGS annual reduction over 3 years above stand-alone plan."  Brightlink argues that the reference to "stand-alone plan" was intended to mean that market forces would be factored out in determining any reduction in Brightlink's COGS.

The terms of any agreement between the parties concerning the calculation of the bonuses depends on the parties' intent, which, as Brightlink concedes, ordinarily presents a question of fact for trial.  *See Peters v. Deseret Cattle Feeders, LLC*, 309 Kan. 462, 470 (2019).[2]  Mr. Nordwald has submitted evidence that a market adjustment was not mentioned during the parties' discussion of the bonuses during their negotiations prior to Mr. Nordwald's hiring; thus there is evidence that the parties did not intend that Mr. Nordwald's bonuses would be calculated in the manner employed by Brightlink.  The Court therefore concludes that a question of fact remains for trial concerning this claim (under either the KWPA or the cause of action for breach of contract), and Brightlink's motion for summary on this claim is denied accordingly.[3]

---

[2] Although the parties have not conducted a choice-of-law analysis, they have agreed that Kansas law governs Mr. Nordwald's common-law claims.  The Court thus applies Kansas law to those claims, based on Mr. Nordwald's residence in Kansas prior to and during his employment with Brightlink.

[3] The Court also rejects Brightlink's argument for summary judgment on Mr. Nordwald's claim for statutory damages under K.S.A. 44-315(b) for a willful failure to pay wages.  As Brightlink concedes, satisfaction of that standard generally presents a question of fact for trial, *see Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 411 (1978), and the Court cannot conclude that no reasonable jury could find a willful violation here.

B.    *Claim for Unpaid Severance*

Mr. Nordwald next claims that Brightlink wrongfully failed to make a severance payment to him upon his termination.  The Court first concludes – as it has in two previous cases – that such a claim may not be asserted under the KWPA because unpaid severance does not constitute unpaid "wages" for purposes of the Act.  *See Fotouhi v. Mobile RF Solutions, Inc.*, 2015 WL 3397205, at *4-5 (D. Kan. May 26, 2015) (Lungstrum, J.); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, 2012 WL 683286, at *15-17 (D. Kan. Mar. 2, 2012) (Lungstrum, J.).  In those cases, the Court distinguished *Commodore v. Armour & Co.*, 201 Kan. 412 (1968), in which the Kansas Supreme Court had held that an employee's separation pay constituted "wages" not for purposes of the KWPA but for purposes of a collective bargaining agreement.  *See Fotouhi*, 2015 WL 3397205, at *4-5; *Firestone*, 2012 WL 683226, at *15-16.  In opposing this argument for summary judgment in this case, Mr. Nordwald relies on *Commodore*, arguing that the purpose of severance pay is also to reward past service, but inexplicably he has failed to address this Court's contrary conclusion in cases on point with this one (despite Brightlink's citation to *Fotouhi* and *Firestone* in its initial brief).  Thus the Court is not persuaded to alter its conclusion that the Kansas Supreme Court would not consider severance pay to constitute "wages" for purposes of the KWPA, and therefore Brightlink is entitled to summary judgment on Mr. Nordwald's claim for severance pay under the KWPA.

The Court is thus left with Mr. Nordwald's common-law contract claim for severance pay.  Brightlink has met its initial burden by providing evidence that severance pay was not part of any agreement between the parties for Mr. Nordwald's employment.

Mr. Nordwald has relied on the offer letter for the terms of his compensation, but that letter did not include severance pay as part of that compensation.  The offer letter did state that Mr. Nordwald would be eligible for benefits, full details of which would be provided to Mr. Nordwald in advance of his starting date, but like the offer letter, the benefits information received by Mr. Nordwald did not include any mention of severance pay.

The only evidence cited by Mr. Nordwald in support of this claim is his evidence that, upon his termination, Scott Allen (Brightlink's COO) told Mr. Nordwald that he would receive a severance package "that was the 'same package as others who were laid off, one week for every year served.'"[4]  Such evidence of a representation long after Mr. Nordwald's hiring, however, does not support any inference that the parties agreed prior to termination that Mr. Nordwald would receive severance pay.  Even if Mr. Allen's statement could be considered evidence of a practice by Brightlink of paying severance to some or all of its employees upon termination (although Mr. Nordwald has not submitted evidence that any other employee actually received a severance payment from Brightlink), there is no evidence that Mr. Nordwald knew of such a practice at the time he entered into any employment agreement with Brightlink.  Nor is there any evidence (in the form of testimony or an affidavit by Mr. Nordwald or any other evidence) that Mr. Nordwald

---

[4] The Court overrules Brightlink's objection to this evidence as hearsay, as Brightlink has failed to explain why Mr. Allen statement would not fall within the scope of Fed. R. Evid. 801(d)(2) as a statement by an employee of the opposing party.  Brightlink also complains that this evidence from Mr. Nordwald's affidavit is self-serving and was not discussed in Mr. Nordwald's deposition, but Brightlink has not shown that the affidavit is inconsistent with the deposition in any way; thus, there is no basis for the Court to disregard the facts contained in the affidavit.

believed or intended that a severance pay provision was part of the parties' agreement at the time of contracting; nor is there evidence that Brightlink had any such intent at that time.

Accordingly, in the absence of evidence to support this claim of a contractual promise by Brightlink to pay severance to Mr. Nordwald, the Court awards summary judgment to Brightlink on Mr. Nordwald's claim for breach of contract for unpaid severance pay.[5]

### C.    *Claim for Payment of Unused Vacation Time*

Mr. Nordwald next claims that he received five weeks of vacation time as a benefit of his employment and that he is owed payment for vacation days that remained unused at the time of his termination.  In opposing this claim, Brightlink argues that it agreed only to the vacation benefit set forth (a) in the offer letter to Mr. Nordwald, which provided that plaintiff would be eligible for 10 days of paid vacation, which days "must be used each calendar year and do not carry over to subsequent periods," and which provided that full details of benefits would be provided to Mr. Nordwald in advance of his starting date; and (b) in Mr. Nordwald's benefits information, which stated Brightlink's policy that employees could not take pay in lieu of time off.  In response to the evidence of these documents, Mr. Nordwald argues and provides evidence that the amount of vacation time was a sticking point in the parties' pre-hiring negotiations and that Brightlink's executives

---

[5] Even if a claim for severance pay could be brought under the KWPA, Brightlink would also be entitled to summary judgment on that claim for this reason of a lack of evidence of an agreement to pay severance to Mr. Nordwald.

made an oral promise to him, as part of his employment agreement, that he would receive five weeks of vacation per year.

The Court concludes that the evidence submitted by Mr. Nordwald is not sufficient to withstand summary judgment on this claim. Even if Mr. Nordwald has shown that an issue of fact remains concerning the amount of vacation time to which the parties agreed, he has not provided any evidence to support the claim that he should have received payment for any unused vacation time. Kansas law does not require an employer to convert vacation time to a lump sum payment absent agreement in the employment contract. *See Sweet v. Stormont Vail Reg. Med. Ctr.*, 231 Kan. 604, 610 (1982). Brightlink has provided evidence that Mr. Nordwald was not promised payment for unused vacation time at the time of his hiring and that Brightlink's policy was in fact *not* to pay for unused vacation time. Mr. Nordwald suggests that Mr. Allen's statement to him upon termination constitutes favorable evidence on this issue. The Court disagrees, however, as according to Mr. Nordwald's affidavit, Mr. Allen referred in that statement only to Mr. Nordwald's receipt of severance pay.[6] Thus, Mr. Nordwald has failed to provide evidence that Brightlink had a policy of paying for unused vacation time or that Brightlink agreed to such a term as part of its employment of Mr. Nordwald. Brightlink is therefore awarded summary judgment

---

[6] Even if Mr. Allen's statement could be interpreted to mean that Mr. Nordwald would receive Brightlink's usual benefits or that he would receive the same benefits that other laid-off employees were receiving, there is no evidence that Brightlink usually paid for unused vacation time (the evidence is to the contrary) or that any other employees received such payments upon termination.

on Mr. Nordwald's claims under the KWPA and for breach of contract based on a failure to pay for unused vacation time.

D.     *Claim for Unpaid 401(k) Contributions*

Brightlink also seeks summary judgment on Mr. Nordwald's claim under the KWPA for additional 401(k) contributions (which is based in turn on the claims for other payments).  Brightlink first argues that Mr. Nordwald must show its "knowing" failure to pay under K.S.A. § 44-323, and that it could not knowingly have failed to make any 401(k) contributions because it outsourced the responsibility for such payments to a third party.  The Court rejects this argument, which is not supported by any citation to authority.  The KWPA provides for the liability of employers for unpaid wages, and "employer" is defined to include an LLC (such as Brightlink).  *See* K.S.A. § 44-313(a). K.S.A. § 44-323(b) provides that an officer or manager or other person who knowingly permits the violation by the employer may also be deemed an "employer" for purposes of the Act.  *See id.*  That section does not require a "knowing" violation for liability of an organization, however.  *See id.*  Mr. Nordwald has asserted his claims against Brightlink as a company, and thus he need not invoke Section 44-323(b).  The fact that Brightlink made 401(k) contributions to employees through another company is not material.

Brightlink also seeks summary judgment on the claims for unpaid 401(k) contributions based on its arguments for summary judgment on the underlying claims for payment.  Because the Court has denied Brightlink's motion for summary judgment on Mr. Nordwald's claim for unpaid bonuses, however, this claim survives as well, to the extent based on additional underlying bonuses (and not the claimed severance or vacation pay).

11

E.    _Claim for Specific Performance_

Brightlink seeks summary judgment on Mr. Nordwald's claim for specific performance, based on its argument that Mr. Nordwald cannot show that his remedy at law (in the form of the payment of damages) would be inadequate here.  *See Hochard v. Deiter*, 219 Kan. 738, 740 (1976).  Mr. Nordwald has not addressed this argument in his response brief.  The Court agrees with Brightlink that if Mr. Nordwald proves the existence of an enforceable contractual term, any unpaid compensation due to him under the contract may be recovered as damages on his claim for breach of contract.  The Court therefore grants Brightlink's motion for summary judgment on this claim.

F.    _Unjust Enrichment Claim_

Brightlink seeks summary judgment on Mr. Nordwald's unjust enrichment claim. Brightlink argues that Mr. Nordwald cannot recover on this claim because he has alleged the existence of a binding contract.  The Court denies the motion for summary judgment on this basis, as Mr. Nordwald is entitled to assert this claim as an alternative to his contract claim in light of the fact that Brightlink continues to dispute the existence of a contract between the parties.  *See United States ex rel. Western Extralite Co. v. Mohan Constr., Inc.*, 2012 WL 907088, at *3 & n.14 (D. Kan. Mar. 15, 2012); *see also Charbonneau v. Mortgage Lenders of Am., L.L.C.*, 2018 WL 6411447, at *2 (D. Kan. Dec. 6, 2018) (courts have "allowed parties to bring alternative claims for quantum meruit in unpaid wage cases").

G.     *Negligence Per Se Claim*

Finally, Mr. Nordwald asserts a claim for negligence per se, based on Brightlink's alleged violations of the KWPA.  In support of that claim, Mr. Nordwald notes the following elements of a negligence per se claim, as stated by the Kansas Supreme Court: a violation of a statute that caused damages and the state legislature's intent of an individual right of action for that injury.  *See Pullen v. West*, 278 Kan. 183, 194 (2004).  In this case, Mr. Nordwald has asserted claims for violations of the KWPA, some of which have survived summary judgment.  Nevertheless, Mr. Nordwald has not shown that he may assert a separate claim for negligence per se under Kansas law.  The KWPA provides for an employer's liability for unpaid wages, and it authorizes an action in court to assert a direct claim under the Act.  *See Spor v. Presta Oil Co., Inc.*, 14 Kan. App. 2d 696, 697-98 (1990) (quoting K.S.A. § 44-324(a)).  Thus, because the statute at issue already expressly provides a remedial scheme including claims for civil liability – of which Mr. Nordwald has availed himself by asserting clams directly under the KWPA – there is no basis for a separate claim sounding in negligence.  *See Comerinsky v. Augusta Coating & Mfg., LLC*, 418 F. Supp. 3d 1252, 1265 (S.D. Ga. 2019) (plaintiff had asserted claims under Title VII's remedial scheme and thus could not maintain a negligence per se claim based on a violation of that statute) (citing cases).  Mr. Nordwald has not cited any contrary authority that would allow for such a claim based on a violation of the KWPA.  Accordingly, the Court grants summary judgment in favor of Brightlink on this claim.

**IV.** **Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims**

    *A.* *Choice of Law*

Before addressing the merits of Mr. Nordwald's motion for summary judgment on Brightlink's counterclaims sounding in tort, the Court must determine which state's substantive law should govern those claims. In the pretrial order, the parties note their agreement that Kansas law governs both parties' claims, subject to a different determination by the Court. In their summary judgment briefs, both parties have cited only Kansas law based on their assumption that Kansas law applies to the counterclaims, although neither party has undertaken a choice-of-law analysis.

The Court applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Kansas law, tort actions are governed by the law of the state in which the tort occurred, that is, the state in which the wrong was felt. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634-35 (1985). The Court has consistently held that if the plaintiff is claiming financial injury, the law of the place of the plaintiff's residence – where the plaintiff felt the financial harm – governs the plaintiff's tort claims. *See, e.g.*, *Alpine Atlantic Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1279 (D. Kan. 2008) (Lungstrum, J.); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (Lungstrum, J.).

In this case, Brightlink seeks to recover for financial harm. It is undisputed that Brightlink is a Georgia LLC with its principal place of business in Georgia; thus, Brightlink

felt any financial harm in that state.  Accordingly, the Court concludes that Brightlink's counterclaims are governed by the substantive law of Georgia.

> B.     *Fraud Claim*

In addressing Brightlink's fraud claim, the Court first seeks to identify specifically the alleged misrepresentation by Mr. Nordwald.  Brightlink's summary judgment brief suggests that Mr. Nordwald may have made misrepresentations not only in pitching the company the Project, but also at the time of his hiring.  Fraud must be pleaded with particularity, *see* Fed. R. Civ. P. 9(b), however, and in its counterclaim and in the pretrial order, Brightlink has only alleged that Mr. Nordwald at the time he proposed the Project falsely represented that "entering into long term contracts with three key suppliers would save Brightlink $265,000 per month."  In neither pleading has Brightlink alleged that Mr. Nordwald fraudulently omitted to disclose any limitation in his expertise.  Accordingly, Brightlink's fraud claim is properly considered as limited to the alleged misrepresentation made by Mr. Nordwald when recommending the Project to Brightlink.

Under Georgia law, "the tort of fraud consists of five elements:  (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *See Smith-Tyler v. Bank of Am., N.A.*, 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (quoting *Next Century Communications Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003)).  The Court concludes that Brightlink has failed to submit sufficient evidence to withstand summary judgment on this claim with respect to a number of these elements.

First, for evidence of the alleged misrepresentation, Brightlink cites only Mr. Nordwald's powerpoint presentation to Brightlink concerning the Project and one excerpt from Mr. Nordwald's deposition testimony.  With respect to the powerpoint, Brightlink cites the following two bullet points from the "Premise" section:  "Opportunity Exists for Brightlink to expand its own network cheaper than it can purchase through 3rd parties;" and "$265k/mo opportunity across 7 LATAs."  In the deposition excerpt, Mr. Nordwald agreed with opposing counsel that the second of those bullet points "represented cost savings of $265,000 a month potential opportunity."  Thus, Brightlink has submitted evidence only that Mr. Nordwald represented that an "opportunity" existed to save $265,000 per month.  As Mr. Nordwald notes, he did not guarantee such a savings, and the powerpoint itself has a section entitled "Risks".  There is no evidence that Mr. Nordwald represented that Brightlink would in fact save that amount if it approved the Project.

Second, as evidence that Mr. Nordwald's representation was false, Brightlink cites only its officer's testimony that the Project failed and that Brightlink incurred costs to get out of the agreements that it had entered into as a part of the Project.  The mere fact that the Project failed, however, does not create any inference that the Project did not represent an "opportunity" for savings, and thus it does not create any inference that Mr. Nordwald's representation was false.

Third, with respect to the element of scienter, Brightlink argues that Mr. Nordwald's recommendation was made knowingly or recklessly because he knew that he lacked experience in the implementation and construction of the recommended network.  The fact that he lacked experience does not create a reasonable inference that he knew the

16

represented savings would not be achieved, however.  At best, Brightlink has submitted evidence supporting an inference of recklessness.  "When attempting to satisfy the scienter requirement through a showing of recklessness, however, the Plaintiff must also show that the Defendant had an intent to deceive."  *See Smith-Tyler*, 992 F. Supp. 2d at 1283.  Brightlink offers no evidence to support a reasonable inference that Mr. Nordwald intended to deceive Brightlink.  Brightlink merely speculates that Mr. Nordwald would have recommended the Project in order to maintain his employment; but such speculation does not provide evidence of an intent to deceive, as his recommendation of a project that proved unsuccessful would not help his standing with his employer.

Finally, Brightlink has not based this claim on the type of representation that may support a fraud claim under Georgia law.

> [I]t is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event.  Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events.  Representations concerning expectations and hopes are not actionable.

*See Griffin v. State Bank of Cochran*, 718 S.E.2d 35, 39 (Ga. Ct. App. 2011) (internal quotations and citation omitted).  The claim must be based on an objective statement of fact, not an expression of personal opinion, and a statement of fact is one that may be adjudged true or false based on empirical justification.  *See Next Century Communications Corp. v. Ellis*, 214 F. Supp. 2d 1366, 1370 (N.D. Ga. 2002) (internal quotations and citations omitted), *aff'd*, 318 F.3d 1023 (11th Cir. 2003).  In this case, Mr. Nordwald's representation that an opportunity existed was true to the extent that it related to an existing fact – an opportunity did exist at that time.  To the extent it could be interpreted as a

17

representation of future income that Brightlink would receive, such a statement represents a prediction, not a statement of present fact that may be adjudged true or false.

It is true that a claim of fraud based on a representation regarding a future event may be actionable if based on evidence that it was made with knowledge that the representation was false or with an intention not to perform. *See Griffin*, 718 S.E.2d at 39. Again, however, Brightlink has not submitted evidence to support an inference that Mr. Nordwald knew that the savings could not be realized. Nor has Brightlink submitted evidence that Mr. Nordwald had no intention of working to make the Project succeed. In addition, to the extent the alleged representation included a prediction that the Project would save a certain amount of money in the future, Brightlink could not reasonably have relied on such a prediction. *See Next Century*, 214 F. Supp. 2d at 1370-71 (party may not justifiably rely on a prediction of a future event as a matter of law).

For these reasons, the Court awards Mr. Nordwald summary judgment on Brightlink's fraud claim.

### C.    *Fiduciary Duty Claim*

Brightlink asserts a claim for breach of the fiduciary duty of loyalty and a claim under Kansas's "faithless servant doctrine." That doctrine has not been recognized under Georgia law, however. Thus, the Court treats this claim simply as one for breach of fiduciary duty. *See Physician Specialists in Anesthesia, P.C. v. Wildmon*, 521 S.E.2d 358, 362 (Ga. Ct. App. 1999) ("a cause of action against an employee for breach of loyalty must be based upon a fiduciary duty owed by the employee and must rise and fall with any claim for breach of fiduciary duty").

18

The Court concludes that Brightlink has not shown that Mr. Nordwald owed it a fiduciary duty with respect to the alleged conduct on which it bases this claim. Under Georgia law, fiduciary duties are owed by those in confidential relationships as defined by Georgia statute, which refers to relationships "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *See Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 281 (Ga. 1998) (quoting OCGA § 23-2-58). Thus, an agent owes a fiduciary duty to his principal with respect to the exercise of that agency. An employer-employee relationship typically does not create a principal-agent relationship, however, even if the employee acts at times on behalf of the employer. *See Physician Specialists*, 521 S.E.2d at 360 (citing cases). "The distinguishing characteristic of an agent is that he is vested with authority, real or ostensible, to create obligations on behalf of his principal, bringing third parties into contractual relations with him." *See id.* (internal quotations and citations omitted). In addition, "the confidential relationship giving rise to a fiduciary duty is not limited to that between a principal and an agent," but "the relationship between an employer and its employee is not the type of relationship from which a confidential relationship will be implied as a matter of law." *See id.* at 361 (internal quotations and citations omitted). "The mere circumstance that two people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential relationship." *See id.* (internal quotation and citation omitted).

In the pretrial order in this case, Brightlink alleges that Mr. Nordwald owed a fiduciary duty by virtue of his employment and that Mr. Nordwald breached his fiduciary duty of loyalty to Brightlink by entering into long term agreements with suppliers that eventually caused Brightlink to suffer losses.[7]  Brightlink now concedes that Mr. Nordwald had no authority to enter into contracts with suppliers on its behalf; thus Brightlink cannot establish the allegation of breach from the pretrial order, and Mr. Nordwald did not owe Brightlink a fiduciary duty as an agent for Brightlink under Georgia law.

Brightlink does argue and has submitted evidence that although Mr. Nordwald had no authority to enter into contracts with third parties, he did have the authority to make purchases and execute purchase orders under existing contracts.  One might then argue that Mr. Nordwald did have some authority to bind Brightlink with respect to such purchases.  Even if Mr. Nordwald could be considered an agent of Brightlink for purposes of those purchases, the breach alleged by Brightlink here is not based on Mr. Nordwald's exercise of that authority; rather, as discussed, Brightlink has only alleged that Mr. Nordwald breached a duty of loyalty in recommending the Project to Brightlink.  Thus, Brightlink has not supported a claim for breach of a fiduciary duty arising from a principal-agent relationship.

---

[7] In its factual contentions in the pretrial order, Brightlink also alleges that it was billed amounts under invoices that differed from Mr. Nordwald's analysis, but it has not linked that discrepancy to a specific breach of loyalty by Mr. Nordwald, nor has Brightlink provided evidence to support that allegation concerning the invoices.  Thus, the Court considers Brightlink's fiduciary duty claim limited to the alleged breach in recommending approval of the Project.

Nor has Brightlink presented evidence of other special circumstances that could have created a fiduciary relationship here.  Brightlink argues that such a relationship arose because it relied on its employee's expertise with respect to vendor management.  As noted above, however, the ordinary employer-employee relationship is not a fiduciary one, and the mere fact that the employer has relied on the employee is not enough to create a fiduciary relationship.  Accordingly, the Court concludes as a matter of law that Mr. Nordwald did not owe Brightlink a fiduciary duty with respect to his recommendation of the Project to Brightlink.  The Court therefore grants Mr. Nordwald's motion for summary judgement on this claim.

        D.     _Negligence Claim_

Finally, Brightlink has asserted a claim of negligence.  According to the pretrial order, Brightlink claims that Mr. Nordwald owed Brightlink a duty by virtue of his employment, which duty obligated Mr. Nordwald not to act contrary to Brightlink's interests, and that Mr. Nordwald breached that duty by entering into long term agreements with suppliers.[8]  As noted, Brightlink has conceded that Mr. Nordwald did not actually enter into such agreements.  Instead, Brightlink argues that Mr. Nordwald negligently recommended that Brightlink approve the Project under which Brightlink entered into agreements.

---

[8] Although Brightlink argues that Mr. Nordwald should have disclosed his lack of expertise, Brightlink has not asserted a claim for negligent misrepresentation or negligent omission, and thus such a failure to disclose cannot serve as the allegedly negligent act.

The Court concludes, however, that Mr. Nordwald did not owe such a duty in tort to Brightlink as a matter of law. *See City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993) (whether a duty of care exists is a question of law). First, Brightlink appears in the pretrial order to assert a duty of loyalty – not to act contrary to Brightlink's interests – and as discussed above, such a claim must be analyzed in the context of a claim for breach of a fiduciary duty (which claim the Court has rejected). To the extent Brightlink asserts that Mr. Nordwald breached a duty of care (as in the typical negligence case) and not a duty of loyalty, Brightlink has not identified any authority – under Georgia law or Kansas law or any other jurisdiction's law – recognizing a duty of care in tort owed by an employee to the employer with respect to the employee's performance of the job. The Court has located only authority casting doubt on the viability of such a claim of duty. *See In re Petersen*, 296 B.R. 766, 780-81 (Bankr. C.D. Ill. 2003) (no remedy for mere poor performance causing lost profits); *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 587 (Miss. 2012) (negligence cause of action "is improper in a case where an employer sues its employee for the employee's failure to due his or her job;" employer's only options were to monitor the employee's performance and to terminate the employment); *see also Gortat v. Capala Bros., Inc.*, 585 F. Supp. 2d 372, 375-76 (E.D.N.Y. 2008) (claims against employee for negligent acts or for losses caused by poor performance are prohibited; otherwise employer would be able to circumvent statute allowing withholding of wages only in certain circumstances), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).

In the absence of supporting authority, the Court cannot conclude that the Georgia Supreme Court would recognize a negligence claim based on a duty of ordinary care owed

by an employee to an employer.  An employee may owe a duty of loyalty, but under Georgia law, a claim of a breach of that duty must satisfy the requirements for a claim of breach of fiduciary duty.  *See Physician Specialists*, 521 S.E.2d at 362.  Otherwise, the employer may obtain only a contractual remedy (such as termination) for an employee's failure to perform obligations under an employment contract.  The Court therefore concludes that Mr. Nordwald is entitled to judgment as a matter of law on Brightlink's negligence claim, and the Court grants Mr. Nordwald's motion for summary judgment on that claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment on plaintiff's claims (Doc. # 59) is hereby **granted in part and denied in part**.  The motion is granted with respect to (a) plaintiff's contract and statutory claims for unpaid severance pay and for unpaid vacation pay, (b) his claim for specific performance, and (c) his negligence per se claim, and defendant is awarded judgment on those claims; the motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for summary judgment on defendant's counterclaims (Doc. # 61) is hereby **granted**, and plaintiff is awarded judgment on those claims.

IT IS SO ORDERED.

Dated this 6th day of May, 2022, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23